## SELBY vs. BASS ET AL.

APPEAL FROM THE COURT OF THE NINTH DISTRICT, FOR THE PARISH OF CARROLL, JUDGE TENNY PRESIDING.

Where a party having two capacities, takes possession of property, and it is doubtful in which capacity he holds, the legal presumption is that he takes in the capacity the law authorises, and that he will do what it is his duty to do.

So where the widow causes an inventory to be made of her deceased husband's estate, and omits to put some articles in it; renounces the community, but acts as administratrix and as tutrix of her minor children; and then as executrix under a will found, and pays some debts without the order of the judge, she is not liable as intermeddler, when there is no attempt at concealment or fraud shown.

This is a suit against Martha A. Bass, late wife of D. O.

Barton, and now wife of W. A. Benton, claiming from her individually the sum of $5060, which the plaintiff alleges, is due to him from the estate of her late husband for counsel fees, and a note of D. O. Barton for $3500 ; for all of which he alleges, she has made herself liable by intermeddling and taking possession of her deceased husband's estate illegally, &c. He prays judgment against her individually ; and also against her present husband.

The defendant, Madame Bass, denied her liability or that she was guilty of intermeddling ; and averred, that whatever she did, was by the advice of the plaintiff, as her legal adviser and attorney at law.

There was judgment, under the pleadings and the evidence produced, in favor of the plaintiff, and against the defendant, for the sum of $4,930, with 10 per cent. interest on the amount of the note ; and 5 per cent. on the remainder. She appealed.

*McGuire & Garrett,* for the plaintiff and appellee.

*Copley & Downs,* for the defendant.

*Garland J.* delivered the opinion of the court.

The plaintiff alleges, that Martha A. Bass, late widow of David O. Barton, and now wife of W. M. Benton, is indebted to him the sum of $5,060, with interest at 10 per cent. per annum on $3,500, from the 16th of March, 1838, and 5 per cent. on the remainder, from judicial demand. This claim is alleged to be made up as follows :

1st. Of a note of $3,500, with 10 per cent. interest, as claimed, which David O. Barton in his lifetime had given to plaintiff.

2d. Of the sum of $80, which D. O. Barton owed plaintiff as a lawyer's fee in a suit, wherein he represented Barton.

3d. A sum of $50, also a lawyer's fee, owing by Barton for services rendered him.

4th. The sum of $270, also a lawyer's fee, in a suit in which plaintiff represented Barton and wife.

WESTERN DIS.
October, 1841.

SELBY
vs.
BASS ET AL.

5th. The sum of $80, another fee as Barton's counsel in suit No. 127.

6th. The sum of $50, also a fee as Barton's counsel in another suit.

7th. Another fee of $50, for services as counsel in preparing title papers.

8th. That after the death of D. O. Barton, the defendant, his widow, employed the plaintiff as sole counsel, to advise and represent her in the settlement of the succession. He was to act as such counsel until the succession was settled. In this capacity he assisted in having Mrs. Barton confirmed as tutrix of her minor child, attended to having an inventory made, advised and drew up an act, whereby Mrs. Barton renounced the community of acquests and gains, had her appointed administratrix, and advised and acted for her and various other matters relating to the succession. He also says, that in consequence of being so retained, he refused various large fees in cases against the said succession, for all which he claims the sum of one thousand dollars.

It is further alleged, that after the death of D. O. Barton, the defendant, his late widow, took possession of all his property, amounting to about $40,000, and appropriated it to her own use. That she examined the papers belonging to the succession before the seals were placed on them. That she did not include in the inventory all the property belonging to the succession, but concealed a part with the intention of appropriating it to her own use, by means of all which acts she has made herself personally liable, to pay the demands of the plaintiff against the succession of D. O. Barton. The marriage of Mrs. Barton with W. M. Benton is alleged, and a judgment *in solido* asked against them.

The defendants for answer deny the plaintiff's allegation and demands, especially those charging an interference with or concealment of any portion of the effects of the succession. They set up the renunciation of the community by Mrs. Barton, under the advice of the plaintiff. That she always acted

by his advice and under his counsel, and if she ever did any act in relation to said succession, whereby she incurred any responsibility, it was the result of the plaintiff's counsels and advice, and she is not responsible to him, and he cannot take advantage of them.

The evidence shows, that the plaintiff did render various services as an attorney and counsellor at law for D. O. Barton in his lifetime, also in one case for his wife, for which $270 is charged. It is also shown, plaintiff advised Mrs. Barton to renounce her interest in the community, and drew up the act for her. He took the necessary steps to have her confirmed as tutrix of her minor child, attended the making of the inventory, and did other acts as the retained counsel of the estate. His claims for services seem established, and there is very little contest on that part of the case or as to the note for $3,500, given by Dr. Barton to plaintiff. The liability of the late Mrs. Barton, to pay those debts, is the principal question in the case.

David O. Barton died on the 4th of January, 1839; some days after the plaintiff, as counsel for the widow, presented a petition to the probate judge, stating that fact, that there was a minor child, a considerable amount of property, and other usual circumstances, and concludes by a prayer for appraisers and the taking of an inventory. On this petition on the 15th of the same month, the judge made an order directing an inventory to be made, and he actually made one on the 26th day of said month; the plaintiff being himself present, acting as the adviser and lawyer of defendant. At the taking of that inventory, the probate judge testifies, he saw nothing like unfairness on the part of Mrs. Barton, that there appeared to be a perfect understanding of fairness on her part, his own and the plaintiff's. He does not know of any conduct of Mrs. Barton since her renunciation, to make him believe she was disposed to act dishonestly towards the estate. When the first inventory was made, it appears, some funds in the hands of a commission merchant in New Orleans and some articles of moveable pro-

WESTERN DIS.
October, 1841.

SELBY
vs.
BASS ET AL.

perty were not put on it, but afterwards, when the widow renounced, a supplemental inventory was made, which included a carriage and horses and other things, but the document is not in the record. The probate judge says, Mrs. Barton took charge of the estate as administratrix and tutrix of her minor child, with benefit of inventory and a renunciation on her part of the community of acquests and gains. She made an inventory of all the papers in presence of the plaintiff, and never, to the knowledge of the parish judge, did anything to induce a belief, she intended to act unfairly, but appeared anxious to inventory every thing belonging to the community. From other witnesses we learn, she always expressed great anxiety to manage the affairs of the succession properly and not involve herself in any liabilities, and in her correspondence and interviews with plaintiff manifested much solicitude about her situation, and that of the succession of her deceased husband. From her letter to plaintiff, written a few days after the inventory, she seems anxious, that a Mr. Chambliss should have the management of the estate, and expresses her apprehensions he will not agree to take it. She urges the plaintiff to see him and persuade him to accept, and if he will not, she tells the plaintiff she would be glad, if he would undertake it, as she knows her situation, and wants to get some one, who will do her justice. At other times she expresses her solicitude, and about two months after the inventory, upon receiving a message from plaintiff, informing her she must not proceed further in the management of the estate, she writes in a style of honest alarm, and begs him to visit her immediately, and inform her of her " danger in that matter."

The crop of cotton made on the plantation in 1838 was put on the inventory, afterwards sent to New Orleans, sold and the proceeds applied to the payment of a debt owing by the estate. Other debts of the estate were paid by the widow, without any particular order from the probate judge, with funds belonging to the estate used for the purposes; but the justice of those claims is not denied. There was a man's saddle in the posses-

sion of another person, when Doctor Barton died, which was not put on the inventory, but the witness says, he did not inform the widow he had it, until sometime after the inventory was closed. She then took it and sold it to a neighbor to pay an undisputed debt of the estate. It seems, a pair of timber wheels were also sold to another creditor to pay a debt of $100. A horse, that had been purchased on credit, was given back to the vendor. These acts and the payment of a debt with the funds in New Orleans, are all, that are proved to show an embezzlement or conversion of the property to her own use. No evidence was given to show, the papers were examined previous to the inventory, and they could not have been with much care, as more than two months after a testament was found among them, which left the widow a portion of the estate, and appointed her executrix.

As soon as the will was found, the defendant by the plaintiff, as her counsel, presented a petition to the probate judge informing him in detail of all the circumstances, states she is a legatee, and has also been named sole executrix, without being required to give security, and prays, that the will be probated and she qualified as executrix; all of which was done. The business went on, as the parish judge says, without the executrix sueing any one or being sued for any debt, that he knew of. In the early part of the year 1840, she rendered an account of her administration, and the probate judge says, it has been ordered to be homologated.

About the month of June, 1839, the defendant said to one of her neighbors, that her first impressions were, that she would have nothing to do with the estate, but after consultation with her brother, "she had agreed to take charge of the estate, and she thought she would be able to pay all the debts very easily." At other times she said, "she had concluded to take the property and pay the debts," as her brother advised it, and the plaintiff does not appear to have advised her otherwise.

The succession, although indebted to a large amount, is not

alleged or shown to be insolvent, on the contrary, its solvency is admitted.

Upon these facts the plaintiff attempts to make the widow of D. O. Barton personally responsible for his debts, under the articles 993, 994, 1054, 2387 of the Civil Code. The District Judge gave a judgment for the plaintiff, from which the defendants appealed.

The two last articles relied on by the plaintiff say, " the widow or heir who has concealed or made away with any of the effects of the succession, or partnership, or community of gains, is declared to have accepted the succession or to be con-cerned in common unity, notwithstanding his or her renuncia-tion." It may well be questioned under this law, whether it is not indispensably necessary, that some fraudulent intent must appear to make a widow responsible for the debts of her hus-band, or an heir for those of his ancestor; but that is not very material, as it is not shown in this case, that the defendant, previous to the inventory and renunciation made by her, con-cealed or made away with a single article of property belong-ing to the succession, nor did she endeavor to prevent the judge and appraisers from making an inventory of all the estate. If there was any fraud, concealment or management in making the inventory, or renunciation, which we do not believe, the plaintiff is as much involved in it as the defendant, and cannot profit by it. He was the principal agent and adviser, and is *particeps criminis*, if any thing is wrong. The case of Ford vs. Ford, 1 La. Rep., 201, is widely different from this, and does not sustain the plaintiff in his position.

To enable the widow to renounce, she must by art. 2382 make an inventory in the same manner as the beneficiary heir, which has been done in this case.

But it is alleged, the defendant is responsible under the ar-ticle 993 of the Code, having disposed of certain property, without the consent of the judge, to wit: the crop of cotton, the saddle, the wheels and the horse heretofore mentioned. To understand the proper application of this article of the

WESTERN DIS. Code, others must be considered. In the first place, the article
October, 1841. is founded on the assumption, that the heir has not made an
SELBY inventory or renounced the succession, and any act of the kind
vs.
BASS ET AL. mentioned without authority, is taken as evidence of his inten-
tion not to renounce to, but to accept, he is therefore liable to
pay the debts.   A tacit acceptance of a succession is supposed
from some act, that indicates an intention.   La. Code, art. 982;
1 Martin, N. S., 202; 2 Idem, 422.   Various acts may indi-
cate that intention, and there may sometimes be an actual in-
termeddling with the property of a succession, and yet the per-
son not be liable as heir;   on the other hand, there are some
acts which are foreign to a succession, and yet manifest a will
to accept.   La. Code, arts. 983, 985, 986; 2 Martin, N. S.,
556; 4 Toullier, No. 331; Poth. Commun., No. 538.   The
intention must be united to the fact, or rather manifested by the
fact. La. Code, arts. 984–987.   Those acts of property which
the person called to the succession, can only do in the quality
of heir, necessarily suppose an acceptance, because he acts as
owner. Art. 988.   But the person called to the succession does
not commit an act as heir, by disposing of property belonging
to it by another title, than that of heir;   as if he should be
testamentary executor and heir at the same time, provided, in
so disposing of the property, he does not assume the quality of
heir; Idem, arts. 988, 989; and with regard to those acts,
which may be differently interpreted, it is necessary to distin-
guish acts of property from acts of administration or preserva-
tion, or preparatory acts.   The time must also be taken into
consideration.   Idem, arts. 990, 991.

Where a party
having two ca-
pacities, takes
possession of    When a party, having two capacities, takes possession of
property, and it
is doubtful in property, and a question arises as to which he holds under, it
which capacity
he holds, the is a legal presumption, he takes in the capacity the law author-
legal presump- izes.   That is, he will do what it is his duty to do.   *Omnia*
tion is, that he
takes in the ca- *rite esse acta.*   2 Starkie, 673.
pacity the law
authorizes, and    When these principles are applied to the facts of this case,
that he will do
what it is his it will be seen, that previous to the inventory the defendant had
duty to do.    done no act to make herself liable for the debts.   If any acts of

fraud, embezzlement or concealment occurred in the taking the inventory, we have before said, the plaintiff is as deeply involved as she is, and cannot profit by them. After the inventory and renunciation, it is clear from the evidence of the parish judge, she acted as administratrix and tutrix of her minor child. After the will was found and ordered to probate, she was then in possession as executrix, and authorized to administer the estate as such, and has so administered ever since so far as the record shows us. If she shall mal-administer, she is liable for her acts, and can be sued in the proper tribunal, and made responsible. If as executrix, she chooses to pay the debts without the authority of the judge of probates, she can do so, and is responsible, if any creditor, heir or legatee suffers damage or injury by it. The succession is admitted to be solvent, and no tableau of distribution is necessary. If she delays the payment of the debts still owing, the creditors can institute the proper proceedings against her as executrix, and enforce payment. The plaintiff, therefore, has a remedy for all his legal rights.

For the amount of the note for $3,500, and interest, for the counsel fees alleged to be owing by D. O. Barton, previous to his death, and for the services rendered by plaintiff as attorney and counsellor in the settlement of the succession, the estate of David O. Barton is responsible, and that portion of his claim must be dismissed, without prejudice to his rights hereafter. As to the claim against the defendant, M. A. Bass, personally, for services rendered and advice as counsel previous to the inventory and renunciation, and at the time of making the latter act, she is responsible in this action, also for the fee in the case of Bowen against her, which was a matter affecting her interests, arising previous to her marriage with D. O. Barton, but as the evidence does not enable us to fix with any certainty the value of those services, we must remand the case for a new trial.

The judgment of the District Court is therefore annulled, avoided and reversed, and all of the plaintiff's demand founded

on the promissory note set forth in the petition, also all his claims against David O. Barton for fees, as his attorney and counsellor at law previous to his death; also for fees as attorney and counsellor in the settlement of his succession, are dismissed without prejudice to his legal rights; in relation to the two claims against the defendant personally for counsel fees, the case is remanded to the District Court, to be proceeded in according to law, the plaintiff and appellee paying the costs of this appeal.