Morphy, J.
The petitioner, a judgment creditor of the succession of David O. Barton, for $1570, seeks to render personally liable for his claim, Martha A. Bass, late widow of the deceased, and now wife of W. M. Benton. He alleges in substance that the said Martha A. Bass, at the death of said David O. Barton *114 intermeddled with his estate, by taking from it certain moneys, and not accounting for the same in any manner whatsoever; that she did not inventory a great part of the property belonging to the deceased, but kept the same, and converted it to her own use; that she recovered debts due to the estate for which she never accounted, and paid claims against it without any order from the Court of Probates; that she never filed a tableau of distribution, nor in any way accounted for any of the moneys received by her belonging to the succession ; that, as executrix, she never obtained any order authorizing any of the sales she made, and never attended to any of her duties in said capacity, and has lately caused herself to be discharged without rendering an account of her executorsíiip, &c.; by means of all which acts and omissions she has made herself personally liable for the debts of the estate. The petitioner further alleges that W. M. Benton, the second husband of Martha A. Bass, has also rendered himself liable for the debts of the said David. 0. Barton, by participating in said acts of intermeddling and taking possession of property belonging to the estate; and a judgment, in solido, is asked against both of the defendants. The latter deny having ever intermeddled, or interfered with the property and effects of the late David O. Barton in any manner, shape, or form, so as to make themselves liable as wrongdoers ; they aver that Martha A. Bass was appointed executrix to the estate, and qualified as such in the Probate Court of the parish of Carroll, and that all her acts and doings in relation to the said estate, were done by her in her representative capacity, in good faith, and with a view to the interest and benefit of the same, cautiously avoiding to do any act or acts that might render her personally liable in any manner whatever. The case was tried in the District Court by a jury, who brought in a verdict in favor of the plaintiff. A motion for a new trial was made, which, upon the judgment being remitted as to Warren M. Benton, was overruled, and judgment rendered accordingly against Martha A. Bass, for the full amount of the plaintiff’s claim ; from this judgment she appealed.
In the case of Selby against the same defendants, reported in 19 La. 499, the facts and evidence are stated at full length, in relation to all the acts and doings of the appellant after her *115 husband's will was found, and she had qualified as executrix. On a careful examination of that case we came to the conclusion that, as previous to the inventory she had done no act to make her liable for the debts of her husband’s estate, her subsequent acts were done in her representative capacity, and could not render her liable as an intermeddler or wrongdoer, even if they were irregular or illegal. In the present case the record contains evidence, and discloses facts, which did not appear in the suit just alluded to. Lewis Selby, a witness for the plaintiff, testifies that he was at the house of Dr. Barton when he died, or perhaps a few hours afterwards, having been sent for by Mrs. Barton, and requested to assist her as counsel in settling the estate. They examined some papers together, and found none of much importance ; witness picked up a roll of papers, which he found to be bank-notes from an examination of the edges; he did not see the denomination of the bills ; the roll was about the size of three fingers, or perhaps smaller ; if large bills, there might have been some thousands of dollars, if small, much less. He laid down the roll. The widow then took it up, and witness has never since seen or heard of it. Witness gave her some hints that she should not meddle with the estate. She answered, in substance, that she thought the money had not been properly taken care of before, that she would be the banker now, and would take care of it herself. The same witness testifies that, in the spring before the death of Dr. Barton, (which occurred in January, 1839,) he saw in his possession a number of one thousand dollar bills, probably ten or twelve ; he understood from Dr. Barton, that he had collected thé money for Bass’estate to which he was executor, &e. Another witness, Dr. A. C. Roberts, says, that he was with Dr. Barton a good deal through his last illness up to the night of his death. A few days before he died, he had occasion for some money; he called for a pocket-book, in presence of witness, and opened it; witness saw in it several large bills of $ 100, there appeared to be a large amount of paper-money in the pocket-book. Witness was with Dr. Barton the greater portion of every day for some weeks before he died. At the time witness saw the money spoken of, the deceased was laboring under the dropsy, and it was hourly expected he would *116 die. Witness did not see him expend any money after that time. He thinks the bills he saw in Dr. Barton’s possession, so shortly before his death, were Louisiana bills. From this evidence it is clear that there existed money, in the possession of Dr. Barton at the ■ time of his death, although the precise amount of it has not been shown, and that this money was taken by his widow, Martha A. Bass, who does not appear to have accounted for it, either when she had an inventory of the estate taken by the Parish Judge, or when she rendered an account of her administration as executrix, and obtained her discharge. A few days after the inventory was made, she executed before the Parish Judge, and two witnesses, an act in which she renounced the community of gains and ac-quests which had existed between her and her late husband, and indicates a few effects of little value as having been left out of the inventory by oversight or accident, but makes no mention of any amount of money having been found by her in the possession of her deceased husband. The positive testimony of those witnesses, who declare that they saw money in the possession of Dr. Barton shortly before, and after his death, cannot be outweighed' or destroyed by the declarations of some of the female acquaintances, or friends, of the defendant, that they saw no money about the house and do not believe that the widow had much in her possession, as she sometimes borrowed small sums of money for her current expenses- She might have borrowed money for the very purpose of producing the belief that she had none ; or it might be that she had none but large notes then in her possession. It is true, that some of the witnesses, who were well acquainted with the affairs of the deceased, testify, that he had little money of his own, although he might have had funds belonging to the estate of Job Bass, whose executor he was. It matters not for whose account he had the money if it was found in his possession ; it was his money although he may have owed the estate of Job Bass an equal, or a larger amount; money, except in case of special deposit, or under peculiar circumstances, cannot be identified.
The surviving wife, who wishes to preserve the power of renouncing the community of gains, must make a true and faithful inventory of all the property belonging to it. Civ. Code, art. *117 2382. If she conceal or make away with any of the effects of the partnership or community of gains, she will be declared common in property with her husband, notwithstanding her renunciation. lb. art. 2387. This court has held, that a wife cannot renounce the community, if it be proved that she has transferred a note belonging to it for the purchase of property in her own name. Lauderdale v. Gardner, 8 Mart. 717. Davis v. Gardner, Ib. 729. These decisions are based on the provision of law which exists in the old, as well as the new Code, which deprives the widow who takes an active concern in the affairs of the community, of the right of renouncing the same ; but from whatever cause she forfeits the right of renouncing the community, she can be made responsible only for one-half of the debts contracted during the marriage. Civ. Code, art. 2378. Flood el al. v. Shomburgh, 3 Mart. N. S. 631.
There are in the record two bills of exceptions taken by the defendants’ counsel, one is to the charge of the Judge, as actually given on the trial; and the other is to the refusal of the Judge to charge the jury, that “ the only grounds on which the plaintiff could proceed against the defendants formally in the court below, was that of fraud or concealment of the effects of the succession of D. O. Barton, deceased, with a fraudulent intent.” The written charge of the Judge was, that, “there are two methods by which a widow in community of property, with her deceased husband, may accept that community : one is by some written act; the other is by taking into her possession, and converting to her own use, any of the property, without accounting for it previous to making a renunciation. All the property of all kinds found in the possession of the deceased, the law presumes to belong to the succession. All the money found in it belongs to the succession, unless it can be identified by some description so that it may be inventoried in kind. If the widow, previous to making a renunciation of the community of acquests and gains, take into her possession any of the property of her deceased husband, and make use of it for her own use and benefit, without accounting for the same, she looses the capacity to renounce, and becomes unconditionally liable to pay the debts. It is not necessary that the widow should have intended the commission of a fraud on *118 the creditors. It is a legal right which she has, to accept the succession in any manner under the conditions imposed by law; if she should prevent a just inventory being taken, with an intent to hinder, or oppose a just administration of the affairs of the succession, she will be liable; she must then have intended to commit fraud. If the widow has made herself liable, the creditors of the succession may sue her, whether the estate of the deceased be solvent or not. If the wife were administratrix or executrix at the time she took possession of the property, it will be presumed that she took possession in that capacity; and on her neglect to account for it, she must be sued on her bond. The court having decided that any moneys found in the possession of Dr. Barton, without being particularly marked, were his property, the jury, in order to make defendant liable for not inserting these moneys in the inventory, must be satisfied that they came to defendant’s possession, and were by her appropriated to her own use.” This charge is, in our opinion, substantially correct, and in no manner calculated to mislead the jury; and, we think, that the Judge properly refused to charge the jury, as requested by the defendants’ counsel. There are cases in which the wife may render herself personally liable, without having any fraudulent intent, as for instance when she takes an active concern in the affairs of the succession, or fails to make an inventory, before making her renunciation and within the legal delays, &c.; but when her liability results from the taking and converting of the money of her husband’s estate to her own use, as in the present case, the act itself implies fraud. Res ipsa loquitur. She should, however, have been decreed to pay only one-half of the plaintiff’s demand. She is in the same situation as if she had made no renunciation. Art. 2387.
Willson, for the plaintiff,
Stacy and Sparrow, for the appellant.
It is, therefore, ordered and decreed, that the judgment of the District Court, be reversed, and that the plaintiff recover of the defendant Martha A. Bass, wife of Warren M. Benton, seven hundred and eighty-five dollars, with legal interest thereon until paid, from the 5th of November, 1840, with costs below, those of this appeal to be borne by the plaintiff and appellee.