## No. 25.

### MARGARET LACEY *v.* NICHOLAS FERGUSON.

1. Articles 988, 989, 990 and 999 C. C., must be considered in connection with article 1422 *et seq.*
2. The article 999 C. C., holding a person for its debts who disposes of the property of a succession without authorization of the judge, is founded upon the reason of the articles preceding; that he has done some act necessarily indicating the intention to accept and which he had no right to do but in his quality as heir.
3. Heirs who have not made an inventory, although bound for the debts of the succession to which they are called, are not bound *in solido*, but only for their virile portions. C. C. 1425.

4. An act of piety or humanity towards one's relations, is not considered an acceptance of the succession.

5. When the succession will not defray the expenses of administration, the heir need not have it administered. 4 La. An. 329.

*Appeal from the Fifth District Court. Cullom, Judge.*

C. H. *Lavillebeuve* for appellant.

T. H. *Kennedy* and *Henry Chiappella* for defendant.

ROGERS, J.—The plaintiff, alleging that she was a creditor of Catharine Cavanaugh, who died in this city in October, 1873, it is claimed that the defendant, Nicholas Ferguson, was at the time of the decease, her nearest living relative; that as soon as Mrs. Cavanaugh's death became known, he proceeded, wrongfully and unlawfully, to remove her effects and dispose of the same for his own use and benefit; that he accepted unconditionally the succession of his said sister by appropriating all the property and effects of which the same was composed; that he tortiously intermeddled in the succession and rendered himself personally liable for the debts of decedent.

It is evident that this action does not arise under section 3685 Rev. Stat., or C. C., article 1100, which apply to strangers, not heirs; the liability, if any, in this case arises under other provisions of our Code.

Without discussing the verity of plaintiff's claim against the deceased, Catharine Cavanaugh, the facts in the record show that she was a woman quite without means until aided by the plaintiff, who appears to have been a hired servant; that Mrs. Cavanaugh had opened a small grocery on the corner of Canal and Marais streets; the establishment consisted of a store in the front and a small partitioned room in the rear which was used as a bed room. According to all the witnesses, this room was miserably furnished; one of plaintiff's witnesses, testifying to the removal of the effects, says, "one man carried the bed, while another carried a trunk."

It appears that on Saturday, the 4th of October, the constable of a justice's court had, according to his own statement,

sold out everything in the store. The son of plaintiff intimates in his testimony, that Mrs. Cavanaugh, in collusion with the constable's keeper, concealed some valuable articles in a trunk in the rear room. This, however, we cannot consider. The statements are entirely too indefinite to substantiate so grave an offense against an officer of the law. During the night of the day following the sale (Sunday), Mrs. Cavanaugh died, but her death was not known until the following noon, when the police and the coroner were notified. Word was sent to her brother, the defendant, who, according to his own statement and that of the police, was not permitted to enter the house until the arrival of the coroner. That officer having ascertained that death resulted from congestion of the brain, turned over the body to defendant for burial, and in the evening it was buried. It appears that what effects were left in this house were taken to the house of defendant, and left on the banquette in front of his door and in his stable, whether by his orders or not is not clear. We are satisfied, however, that they were without any appreciable value.

The amount of the debt claimed is six hundred dollars, with interest from September, 1873, and for this sum the District Judge gave plaintiff a judgment. Before considering the law applicable to these facts, it is proper to state that the decedent was, as shown by the testimony, insolvent, and that there survived her as heirs, besides the defendant, a mother and three sisters.

Article 999 (993) C. C., which holds a person responsible for having disposed of property of a succession without the authorization of the judge, is founded upon the reason of the articles preceding, assuming that the heir has failed to cause an inventory to be taken; that he has not renounced the succession; that he has assumed the quality of heir in an unqualified manner; that he has done some act which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir. C. C. 988.

It is necessary that the intention should be united to the

fact, or rather manifested by the fact, in order that the acceptance be inferred. C. C. 990.

Various acts may indicate that intention, and there may sometimes be an actual intermeddling with the property of a succession, and yet the person not be liable as heir. On the other hand, there are some acts which are foreign to a succession and yet manifest a will to accept. C. C. 989; 19 La. 506; 15 La. An. 170.

Without now considering other provisions of law creating exceptions under these articles and affecting acts which may be differently interpreted, according to time and circumstances, it will be observed that the Code passes from the consideration of these general principles to rules of action against the heir, and the articles which we have quoted above must be considered in connection with the article 1422 *et seq.*

The personal action which the creditors of a succession can exercise against the heirs, has for its basis the obligation which the heirs are under to discharge the debts of the deceased.

This action is modified according as the deceased has left one or several heirs. Art. 1422 C. C.

But though the heirs and other universal successors who have not made an inventory as before prescribed, are bound for the payment of all the debts of the succession to which they are called, even when the debts exceed the value of the property left them, they are not bound *in solido*, and one for the other, for the payment of the debts. C. C. 1425.

When deceased has left one sole heir, this heir is bound for the payment of the whole debt and may be sued directly and personally as such. C. C. 1426.

If, on the contrary, the deceased has left two or more heirs, they are bound to contribute to the payment of those debts only in proportion to the part which each has in the succession. Thus the creditors of the succession must divide among the heirs the personal action which they have against them

Lacey vs. Ferguson.

and cannot sue one for the portion of the other, or one for the whole debt. C. C. 1427.

In the same manner article 120 C. P. provides that where one against whom there was a cause of action die, leaving two or more heirs, the party may proceed against each of them for the share which he inherits if that share be sufficiently known or ascertained; otherwise, they can only be sued each for a virile portion, that is to say, for an equal part of the debt, dividing it into as many parts as there are heirs.

Article 40 C. P. declares that the heirs shall only be responsible for the amount and portion which each has inherited from the debtor's estate.

In 6th La. p. 17, it appears that Theodore Mudd sued the heirs of Madame Stillé, who were condemned jointly and severally for the debt of their ancestor. Say the court: "We have most positive legislative provision in our Code that heirs are liable only for the part which they have in the succession, and this is the case even where they have made no inventory." And the same decision was made in 2 La. An. 806.

It is manifest, therefore, that the judgment condemning defendant for the entire debt is erroneous. The authorities cited by plaintiff show, as far as we can perceive, that there was but the surviving heir who was sued, particularly the case of Stephenson v. Wilson, 7 La. An. 554.

Our understanding of the facts in this case, already intimated, shows that Mrs. Cavanaugh left nothing of value; that she was buried by the defendant at his own expense; and we now add that there is no evidence to show that he ever disposed of the effects taken to his house, nor does it appear that the plaintiff was in any manner injured. Laws must be interpreted and applied reasonably, and we should view the actions of our fellow-men just as reasonably. That it was physically impossible to remove such goods as plaintiff says was in the store, in the manner testified to by her witnesses, there can be no doubt; while it is quite certain that the testimony of the coroner, the police, the constable and the undertaker as to

what was in the premises is conclusive. Under such a condition of facts, are we to consider that the defendant was seeking his own pecuniary advantage, in fraud of worthy creditors, by appropriating to his own use trash, not worth enough to pay the expenses of the funeral?

An act of piety or humanity towards one's relations is not considered an acceptance; it is not, therefore, an acceptance to take care of the burial of the deceased or to pay the funeral expenses, even without protestation. C. C. 1001.

That the law has justly provided for the payment of obligations due by a decedent out of his estate, and that no one shall, without legal authority, take, enjoy and dispose of this estate to his own use without incurring the obligation to pay the debt, is undoubted, and courts will not hesitate to strictly apply the law when the facts warrant. In this case, it has been made our duty to review the law having application to the personal liability of the heir. There has then been enacted article 1100 C. C., as applying to strangers taking charge of vacant estates, and article 2418, making the widow in community liable for concealing or making away with community property. The same principle of law governs in each of these cases, for the same great purpose of honesty and fair dealing is to be vindicated. This vindication could not happen if we harshly condemned and made a victim of one who, far from enriching himself, has expended his own funds in a pious, though for him as a relation, a very proper act.

In Soubiran v. Rivollet, 4th La. An. 329, the Supreme Court said: "The allegations that the defendant has concealed or made away with the effects of the succession are entirely unsupported by evidence. It is proved, on the other hand, that Rivollet lived separate from his wife, and was at the time of his death in a state of absolute destitution. His brother had to pay his funeral expenses, and the person in whose house he lived has a claim against him for rent and attendance, which she considers lost. This testimony makes it highly probable that the two trunks of which defendant

took charge, contained nothing but the papers and old clothes, which she offers to return. If, as we believe, the succession would not have defrayed the expenses of administration, the defendant was not bound to have it administered."

There is a strong analogy between the case at bar and the one just cited, and the judgment there rendered should be the one rendered in this.

It is, therefore, ordered that the judgment appealed from be reversed and set aside, and that there be now judgment in favor of defendant, rejecting plaintiff's demand, with costs in both courts.

McGLOIN, J., *concurring.*—In this case the evidence does not satisfy me that the removal of the effects of the deceased was the act of the defendant. He, himself, positively declares, under oath, that it was not, and that he knew nothing of it until upon returning from the funeral he found them upon his premises, and the circumstances connected with the removal corroborate him. The property occupied by Mrs. Cavanaugh was rented, and the landlord certainly was the only one interested to order the removal of the things in question before the funeral was ended, whereby his premises would be cleared of them. The burden was upon plaintiff to make certain her case upon this point as upon all others, and I do not think she has succeeded. Furthermore, although disposed to enforce fully the laws under consideration, I am not prepared to announce the doctrine that defendant who knew, as did all others who were acquainted with deceased, that she was utterly insolvent and that these things were all she possessed, rendered himself liable, as unconditional heir, for all her debts by simply removing from the premises of another, which they encumbered and depositing in his stable to be surrendered to whomsoever should call for the same with due authority, things which many reputable witnesses declare to have been mere trash, possessing no value whatever, or one so trifling as to be practically none. I consider the case very similar to the one reported in 4 La. An. 328, Soubiran *v.* Rivollet.

Rehearing refused.